**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF OHIO**
**EASTERN DIVISION**

| | |
|---|---|
| **CITIZENS FOR COMMUNITY STANDARDS,** ) | **Case No. 1:07-cv-2210** |
| ) | |
| **Plaintiff/** ) | **Judge Lesley Wells** |
| **Counter-Defendant,** ) | **Judge Dan Aaron Polster**[*] |
| ) | |
| **vs.** ) | |
| ) | **MEMORANDUM OF** |
| **CITIZENS FOR COMMUNITY** ) | **OPINION AND ORDER** |
| **VALUES CORPORATION,** ) | |
| ) | |
| **Defendant/** ) | |
| **Counter-Plaintiff.** ) | |

At issue in this Order is the Motion for Temporary Restraining Order filed by Defendant/Counter-Plaintiff Citizens for Community Values Corporation ("CCV") on August 14, 2007 (the "Motion"). **(ECF No. 9.)** Plaintiff/Counter-Defendant Citizens for Community Standards ("CCS") filed a brief in opposition to the Motion on August 17, 2007 (the "Opposition Brief").[1] (ECF No. 11.) On August 15, 2007, and again on August 20, 2007, the Court

---

[*]The instant case is assigned to District Judge Lesley Wells. When the Motion for Temporary Restraining Order was filed, however, Judge Wells was out of the district, and District Judge Dan Aaron Polster was the Miscellaneous Judge on duty. Judge Polster continues to be the Miscellaneous Judge during the week of August 19-25, and Judge Wells is still out of the district, and as such Judge Polster issues this Memorandum of Opinion and Order.

[1]CCS's Opposition Brief was also its brief in opposition of CCV's Motion for Preliminary Injunction (ECF No. 7). The instant opinion considers the Motion for Temporary Restraining Order only.

conducted teleconferences with counsel for each party, to discuss the Motion and issues associated therewith. (See ECF docket entries for August 15, 2007 and August 20, 2007). During the August 20, 2007 teleconference, the Court orally denied CCV's Motion. The Court now issues this Memorandum of Opinion and Order memorializing the reasons for the denial.

## I. BACKGROUND

In May of 2007, a bill passed the Ohio legislature that would impose strict statewide regulations on the hours of operation and other conditions under which adult entertainment businesses operate in Ohio. Governor Ted Strickland allowed the bill, known as Substitute Senate Bill No. 16 ("Sub. S.B. 16"), to become law – without his signature – and it is scheduled to go into effect on September 4, 2007.[2] Seeking to overturn the law by placing the issue on the statewide ballot for the November 6, 2007 election, opponents formed a political action committee on June 5, 2007, which they named Citizens for Community Standards, or CCS. Groups such as CCS that oppose Sub. S.B. 16 must gather at least 241,366 valid signatures from registered voters – a number that equals six percent of the total votes cast in the 2006 governor's race – to be certified and therefore refer the issue to a statewide popular vote on the November ballot. On the other hand, groups such as Citizens for Community Values,[3] or CCV, proposed, advocated for, and sought adoption of legislation that eventually took the form

---

[2] If opponents of the law gather enough verified signatures by September 3, 2007, the new law will not go into effect, pending the outcome of the November vote. (See ECF No. 9-2, Motion for TRO, Ex. 1; ECF No. 4-4, Verified Counterclaim, Ex. 3.)

[3] CCV describes itself as a non-profit corporation organized "to promote high community standards of decency and strong family life that would help protect children, youth and the total quality of life in the Greater Cincinnati area." (ECF No. 4, Verified Counterclaim, 7:¶6.)

of Sub. S.B. 16. CCV represents that it will undertake activities to oppose the referendum should the petitions be certified.

On July 3, 2007, counsel for CCV sent a letter to CCS demanding that CCS cease and desist in using the name "Citizens for Community Standards." (See generally ECF No. 1-2, Compl. Ex. A.) In the letter, CCV's counsel claimed that CCV owned the word mark for "Citizens for Community Values," as well as the trade name "Citizens for Community Values." (*Id.*) Accordingly, counsel continued, CCS is infringing on CCV's trade name and trademark rights through its use of the name "Citizens for Community Standards." (*Id.*)

CCS, through counsel, responded via letter dated July 19, 2007, and claimed that CCV's trademark of "common everyday words" is invalid, that CCS is not infringing on any trademark, and that CCS has a First Amendment right to use the name "Citizens for Community Standards." (See generally ECF No. 1-3, Compl. Ex. B.) Accordingly, CCS refused to accede to CCV's demands. (*Id.*)

On July 23, 2007, just four days later, CCS filed a Complaint for Declaratory Judgment and Other Further and Necessary Relief. CCS, perhaps anticipating that CCV would initiate litigation, sought, *inter alia*, a declaration that under federal and state law CCS's use of the name "Citizens for Community Standards" does not infringe CCS's mark or its trade name, is fair use, and is protected by the First Amendment. (ECF No. 1, Compl., 8:¶1.) CCV filed an Answer and Verified Counterclaim on August 7, 2007. (ECF No. 4, Answer/Counterclaim.) In its Verified Counterclaim, as well as in a separately filed Motion For Preliminary Injunction (ECF No. 7), CCV sought, *inter alia*, preliminary and permanent injunctions enjoining CCS from: 1) using the name "Citizens for Community Standards" in connection with services

promoting the referral of Sub. S.B. 16 to a vote of the electorate and services promoting opposition to the regulation of sexually oriented businesses; 2) using the Internet URL www.citizensforcommunitystandards.org; 3) infringing U.S. Trademark Registration No. 2,603,504; 4) unfairly competing with CCV; and 5) injuring CCV's business reputation. (ECF No. 4, Verified Counterclaim, 17:¶50; ECF No. 7, Motion for Prelim. Injunction, 1-2.) One week later, having not yet received a ruling on its motion for preliminary injunction and noting news reports of CCS's likely petition drive success, CCV filed the instant Motion which seeks to enjoin the same five activities listed above.

## II. LAW AND ANALYSIS

### A. Standard for Temporary Restraining Order

The Court must consider four factors when ruling on a motion for a temporary restraining order,[4] namely: 1) whether the movant (here, CCV) has a strong likelihood of success on the merits; 2) whether CCV would suffer irreparable injury without the injunctive relief; 3) whether issuance of the injunction would cause substantial harm to others; and 4) whether the public interest would be served by issuance of the injunction. *Chabad of Southern Ohio & Congregation Lubavitch v. City of Cincinnati*, 363 F.3d 427, 432 (6th Cir. 2004); *see also Warshak v. United States*, 490 F.3d 455, 465 (6th Cir. 2007); *McPherson v. Michigan High Sch. Athletic Ass'n*, 119 F.3d 453, 459 (6th Cir. 1997 (en banc). The Court need not make specific findings concerning <u>each</u> of the four factors if fewer factors are dispositive of the issue. *See ACLU v. McCreary County*, 354 F.3d 438, 445 (6th Cir. 2003) (*citing In re DeLorean Motor*

---

[4]The Court notes that so long as there is notice to the other side and an opportunity to be heard, the standard for a preliminary injunction is the same as that for a temporary restraining order. *Rios v. Blackwell*, 345 F. Supp. 2d 833, 835 (N.D. Ohio 2004) (*citing News Herald v. Ruyle*, 949 F. Supp. 519, 521 (N.D. Ohio 1996) (*in turn citing Martin-Marietta Corp. v. Bendix Corp.*, 690 F.2d 558, 564 (6th Cir. 1982)).

*Co.*, 755 F.2d 1223, 1228 (6th Cir. 1985)); *see also Rios v. Blackwell*, 345 F. Supp. 2d 833, 835 (N.D. Ohio 2004) (citing *In re DeLorean*, 755 F.2d at 1229)).

**B. CCV's Claim to Irreparable Harm**

Here, CCV argues that it "is in need of immediate injunctive relief to protect against the improper use of the confusingly similar name 'Citizens for Community Standards' by CCS as part of its effort to defeat Sub. S.B. 16." (ECF No. 9, Motion at 3.) CCV, in light of CCS's successful petition drive in advance of the September 3, 2007 deadline, claims immediate irreparable harm to the extent that CCS starts campaigning state-wide in support of the ballot referendum. CCV, however, has not shown that it is likely to suffer irreparable harm absent a temporary restraining order against CCS.

First, whether Sub. S.B. 16 will appear as a ballot referendum on the November ballot is still uncertain. The deadline for submitting petition signatures is September 3, 2007, and although CCS purports to have collected some 248,600 signatures, there is no guarantee that CCS will have the necessary 241,366 verified signatures after the certification process. Counsel for CCV explained the process as follows: To refer Sub. S.B. 16 to the ballot, CCS must file the signed petitions with the Secretary of State's office, with the potential last batch of signed petitions most likely submitted on or about September 4, 2007. The Secretary of State's office must initially review the signatures for verification, a process which will take approximately 7-10 days. The petitions will then be sent out to the county Boards of Elections throughout the state for additional review, which will take approximately 10-14 days. All told, the entire process will require approximately three to four weeks from when the petitions are submitted until the county Boards of Elections report back to the Secretary of State. Then, if the petitioners

lack the requisite number of valid signatures, they are allowed an additional ten days to collect more signatures, after which the aforementioned process must be repeated with the newly submitted petitions.

The status of Sub. S.B. 16 as a ballot referendum will remain unclear until such point as the petitions are certified by the Ohio Secretary of State's office, and Sub S.B. 16 takes the form of Issue [X] on the ballot. As CCV conceded during the August 15, 2007 teleconference, nothing will be certified until the end of September at best, several weeks from now. No petition certification means no ballot referendum, and CCS, by its own admission, would not continue to function if they failed to successfully refer Sub. S.B. 16 to the ballot. Therefore, CCV cannot show irreparable harm in the absence of a temporary restraining order.

Second, counsel for CCS explicitly stated to the Court during the August 20, 2007 teleconference that CCS does not plan any major media campaign efforts in support of the potential ballot referendum before at least the end of September. Since the irreparable harm cited by CCV is the widespread use of the name "Citizens for Community Standards" in opposing Sub. S.B. 16, CCV has no need for injunctive relief for at least another month.[5]

### III. CONCLUSION

The finding that CCV cannot show that it faces irreparable harm from CCS's alleged improper use of the name "Citizens for Community Standards" in the absence of a TRO is dispositive of CCV's Motion. Therefore the Court need not analyze the other three remaining

---

[5]The fact that the TRO requested by CCV might constitute a prior restraint on CCS's First Amendment rights dictates that the Court demand that CCV unequivocally demonstrate that it will suffer irreparable injury in the absence of a TRO.

factors.[6]  Accordingly, CCV's Motion for Temporary Restraining Order **(ECF No. 9)** is **DENIED**.

Moreover, as the Court explained to the participants in both teleconferences, continued, expensive litigation over the names used by the competing organizations is wasteful and distracting; the parties should be focusing their respective attention (and monetary resources) on preparing for the possible ballot referendum campaign.  Therefore, the Court has scheduled a settlement conference for **Wednesday, August 29, 2007, at 12:00 noon** eastern standard time, in Chambers 18B of the Carl B. Stokes United States Courthouse in Cleveland, Ohio.  In addition to counsel, one of the principles with full settlement authority for each party shall appear in person.[7]  Any workers from the adult entertainment establishments are also free to appear, as their economic interests are significantly impacted by Sub. S.B. 16.  In addition, counsel for each side shall file a short document explaining what, if any, discovery needs to be done, should settlement efforts prove unsuccessful and the Court needs to address the Motion for

---

[6] As the Court explained to the parties during the August 15, 2007 teleconference, the CCS internet website could in no way be confused with CCV's website, despite CCV's request for injunctive relief prohibiting the use of www.citizensforcommunitystandards.org.  A single glance at the two websites readily informs the viewer of the differences between the two organizations.  Furthermore, the URL for CCV's homepage is www.ccv.org, not something closer to CCS's URL.  Importantly, www.citizensforcommunityvalues.org does not appear to be a valid URL or domain name, giving lie to CCV's claims that people may confuse the website address for CCV with the website address for CCS; the respective valid URLs are, if nothing else, markedly different visually.  Likewise, the domain names associated with emails from the respective parties will be dissimilar as well, based on their respective website addresses.

[7] According to the parties' representations during the August 20, 2007 teleconference, the three principles for CCS include Mr. Joseph Vaillancourt, Ms. Donna Bowling, and Mr. Frank Spencer.  The two principles for CCV include Mr. Phil Burress and Mr. David Miller.

Preliminary and Permanent Injunction.  This document shall be filed no later than **4:00 p.m. on Tuesday, August 28, 2007**. Counsel shall also, **by the same deadline**, send a copy of the document to the Court and to opposing counsel, via fax. The Court's fax number is **216-357-7195**.

      **IT IS SO ORDERED.**

                                              */s/Dan Aaron Polster    August 21, 2007*
                                              **Dan Aaron Polster**
                                              **United States District Judge**